**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-2049-WJM-MEH

SAVANT HOMES, INC.,

     Plaintiff,

v.

DOUGLAS W. COLLINS,
DOUGLAS CONSULTING, LLC, d/b/a COLLINS CUSTOM BUILDERS,
STEWART KING, d/b/a KODIAK CUSTOM DESIGN,
TAMMIE WAGNER, and
RON WAGNER,

     Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

---

Plaintiff Savant Homes, Inc. brings this action against Douglas Collins, Douglas Consulting, LLC, d/b/a Collins Custom Builders (together "Collins"), Stewart King, d/b/a Kodiak Custom Design, and Tammie and Ron Wagner (collectively "Defendants") arising out of the construction of two single-family homes in Larimer County, Colorado. (Compl. (ECF No. 1).)  Before the Court are Motions for Summary Judgment filed by Collins and the Wagners ("Motions").  (ECF Nos. 37 & 38.)  For the reasons set forth below, the Motions are granted.

## I.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem*

*Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute --

as to a material fact depends upon whether the evidence presents a sufficient

disagreement to require submission to a jury or conversely, is so one-sided that one

party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49

(1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal*

*Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual

dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a

reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  The

Court must resolve factual ambiguities against the moving party, thus favoring the right

to a trial.  *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  FACTUAL BACKGROUND

Plaintiff Savant Homes, Inc. is a custom home designer and builder, which holds

copyrights to architectural plans VA 1-833-039, entitled Anders Series Plans, and VA 1-

862-641, entitled Anders Series Plan - Constructed Design (together, the "Anders

Plan").  (ECF No. 1 at 2-3; ECF Nos. 37-13 & 37-14.)  Plaintiff has designed and built

numerous homes based on the Anders Plan, including a model home at 8646

Blackwood Drive in Windsor, Colorado.  (ECF No. 37-12.)  Among other features, the

Anders Plan is a three-bedroom, two-bath ranch home that includes a master suite

(bedroom, bathroom, and walk-in closet) that is separated from two guest bedrooms by

the common living area, with a gourmet kitchen that is open to the dining room and a

great room.  (ECF No. 40-10 at 8.)  The laundry room is directly adjacent to the master

suite, and leads directly to a three-car garage, which has its doors at 90 degrees to the

2

street.  (*Id.*)

In 2009, Ron and Tami Wagner (the "Wagners") purchased land at 300 Madera Way in Windsor, Colorado on which they planned to build a new custom home. (Wagner Dep. (ECF Nos. 37-1 & 39-1) p. 12.)  The Wagners contracted with Collins to build the home at 300 Madera Way, and Collins in turn contracted with King to design the home.  (ECF No. 38-2; King Dep. (ECF No. 38-3) pp. 48-49.)

In June 2009, the Wagners visited Plaintiff's model home at 8646 Blackwood Drive with their realtor.  (Wagner Dep. at 18-20.)  Mrs. Wagner took with her one of Plaintiff's brochures, which included a simplified version of the model home's floor plan that is based on the Anders Plan.  (*Id.*; ECF No. 37-18 & 37-19.)  Two months later, the Wagners returned with their realtor to again tour the model home; King and Collins accompanied them on this visit.  (*Id.* at 17-18; Collins Dep. (ECF No. 37-8) p. 63; ECF No. 37-12.)

Construction began on the 300 Madera Way home in October 2009, and was completed in May 2010.  (Wagner Dep. at 30.)  Due to a change in their relationship, the Wagners later purchased land at 8466 Blackwood Drive, and contracted with Collins and King to design and build a second home on this lot.  (*Id.* at 37-39.)  Construction on the 8466 Blackwood home began in October 2011, and was completed in October 2012.  (*Id.*)  The Court will refer to the 300 Madera Way home and the 8466 Blackwood Drive home as the "Accused Homes".

Among other features, the Accused Homes are both three-bedroom, two-bath homes with a master suite (bedroom, bathroom, walk-in closet) that is separated from two guest bedrooms by the common living area, which includes a gourmet kitchen that

is open to the dining room and a great room.  (ECF No. 38-3.)  The laundry room in the

Accused Homes can be accessed directly from the master suite, and leads into a three-

car garage that has its doors at a 90 degree angle to the street.  (*Id.*)

At least one consumer has entered Plaintiff's model home and been confused as

to whether it was built by the same party as the Wagners' home at 8466 Blackwood

Drive.  (Strope Dep. (ECF No. 40-9) p. 82.)  A realtor has also inquired as to whether

Plaintiff built the 8466 Blackwood home.  (*Id.* at 15.)

### III.  ANALYSIS

On the facts set forth above, Plaintiff brings claims against all Defendants for

copyright infringement, contributory infringement, trade dress, intentional interference

with business advantage, civil theft, deceptive trade practices, and civil conspiracy.

(Compl. pp. 5-10.)  Plaintiff seeks a declaratory judgment enjoining Defendants from

further use of its copyrighted work, as well as monetary damages.  (*Id.* pp. 9-10.)

Defendants move for summary judgment on all claims.  (ECF Nos. 37 & 38.)  The Court

will discuss each in turn below.

### A.      Copyright Infringement

Copyright protection extends to "original works of authorship fixed in any tangible

medium of expression . . . ."  Copyright Act, 17 U.S.C. §§ 101-122 (2011).  The

Copyright Act was amended in 1990 to include the Architectural Works Copyright

Protection Act ("AWCPA"), which extends protection to any "architectural work," defined

as "the design of a building as embodied in any tangible medium of expression,

including a building, architectural plans, or drawings."  17 U.S.C. § 101; 17 U.S.C.

§ 102(a)(8).  An "architectural work" includes "the overall form as well as the

4

arrangement and composition of spaces and elements in the design, but does not include individual standard features." 17 U.S.C. § 101.

Plaintiff alleges that the Accused Homes infringe on its copyrighted Anders Plan. (Compl. p. 5.) "There are two elements to a copyright infringement claim: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009). Plaintiff bears the burden of proof on both elements. *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005).

The record shows that Plaintiff's Anders Series Plan was registered with the United States Copyright Office on June 4, 2012, with a listing date of first publication on May 31, 2007. (ECF No. 37-13.) By presenting a registration certificate, a party establishes the *prima facie* validity of the copyright, and the burden to dispute the validity of the copyright then shifts to the party challenging it. *Harris Mkt. Res. v. Marshall Marketing & Comm'ns, Inc.*, 948 F.2d 1518, 1526 (10th Cir. 1991). Defendants do not seriously challenge the validity of this copyright, and the Court finds that Plaintiff has satisfied the first element of its copyright infringement claim.

"A plaintiff can establish that the defendant copied his program either through the presentation of direct evidence, or through indirect evidence that shows (1) that the defendant had access to the copyrighted program, and (2) that there are probative similarities between the copyrighted material and the allegedly copied material." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 832 (10th Cir. 1993). Because direct proof of copying is rare, plaintiffs typically rely on the indirect method of proof. *Id.*

Plaintiff here asserts indirect evidence of copying, alleging that Defendants had

5

access to its Anders Plan, and that the Accused Homes are substantially similar to the copyrighted portions of the Anders Plan.  (ECF Nos. 39 & 40.)  Defendants contend that Plaintiff has presented insufficient evidence of a material dispute as to both prongs. (ECF Nos. 37 & 38.)

       1.    <u>Access to Copyrighted Work</u>

     To demonstrate access, a plaintiff must show that the defendants had a reasonable opportunity to view or to copy his work.  A mere possibility, speculation or conjecture about access does not satisfy this standard.  *See* 3 Nimmer on Copyright Sec. 13.02[A] at 13–18–24.

     To meet this burden, Plaintiff has introduced evidence showing that the Wagners visited a model home based on the Anders Plan in June 2009.  (Wagner Dep. at 24.) Ms. Wagner picked up a copy of Plaintiff's brochure, and retained it.  (*Id.* at 40.)  On August 9, 2009, Ms. Wagner again toured the model home, and this time brought Mr. Collins and Mr. King with her.  (Wager Dep. at 24.)  Within a week of this visit, Mr. King had finalized plans for the 300 Madera home.  (King Dep. at 55.)  In addition to these visits, Plaintiff notes that Defendants had access to a simplified version of its Anders Plan through online marketing tools.  (ECF No. 37 at 6.)

     The Court finds that this evidence is sufficient to permit a reasonable juror to conclude that Defendants had access to the copyrighted work before the Accused Homes were fully designed and constructed.  *See Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg., LLC,* 977 F. Supp. 2d 567, 583 (E.D. Va. 2013) (finding plaintiff had met summary judgment burden of showing access to copyrighted work by showing that defendant had toured model home, picked up a brochure, and received a portfolio

showing drawings of the floor plans); *Dream Custom Homes, Inc. v. Modern Day Constr., Inc.*, 773 F. Supp. 2d 1288, 1303 (M.D. Fla. 2011) (denying summary judgment because plaintiff had shown that defendants toured a model home and viewed plans online).  Accordingly, the Court finds that Plaintiff has discharged its summary judgment burden as to this prong.

      2.    <u>Substantial Similarity Between Copyrighted Portion of Work</u>

To survive summary judgment, Plaintiff must also show a genuine dispute of material fact as to whether there is substantial similarity between the protected aspects of the Anders Plan and the Accused Homes.  "[T]he mere fact that a work is copyrighted does not mean that every element of the work may be protected."  *Feist Publ'ns, Inc. v. Rural Tele. Serv. Co.*, 499 U.S. 340, 348 (1991).  By extending the Copyright Act's protections to the "arrangement and composition of spaces and elements" through the AWCPA, Congress sought to recognize that "creativity in architecture frequently takes the form of a selection, coordination, or arrangement of unprotectible elements into an original, protectible whole."  H.R. Rep. No. 101-735 (1990).  However, the AWCPA does not protect "individual standard features", "standard configurations of space", or design elements that are functionally required.  *Id.*  "Thus, it appears that Congress sought, in adopting the AWCPA, to protect only those 'features [of architectural works] that reflect the architect's creativity,' while excluding from the Copyright Act any unoriginal features, the protection of which 'would impede, rather than promote, the progress of architectural innovation.'"  *Interest Constr., Inc. v. Caterbury Estate Homes, Inc.*, 554 F.3d 914, 919 (11th Cir. 2008) (quoting H.R. Rep. No. 101-735 (1990)).

To distinguish between the protected and non-protected aspects of a copyrighted

7

work, the Tenth Circuit has adopted the "abstraction-filtration-comparisons" test:

> First, in order to provide a framework for analysis, . . . a court should dissect the [work] according to its varying levels of generality as provided in the abstractions test.  Second, poised with this framework, the court should examine each level of abstraction in order to filter out those elements of the [work] which are unprotectable.  Filtration should eliminate from comparison the unprotectable elements of ideas, processes, facts, public domain information, merger material, *scenes a faire* material, and other unprotectable elements suggested by the particular facts of the program under examination.  Third, the court should then compare the remaining protectable elements with the allegedly infringing [work] to determine whether the defendants have misappropriated substantial elements of the plaintiff's [work].

*Gates Rubber*, 9 F.3d at 834.

Plaintiff attempts to meet this burden by introducing an expert report prepared by Justin Larsen, in which he opines that the overall layout and flow of the Accused Homes is substantially similar to the Anders Plan.  (ECF No. 40-10.)  Larsen states that "the houses overall share a very similar aesthetic and layout as seen from the exterior with many elements being similarly located including the garage, living areas, windows, and entryway.  Any differences are mostly minor cosmetic changes between the two." (*Id.* at 2.)

The Court finds that this expert report does not meet Plaintiff's burden with regard to the second prong of the copyright infringement analysis.  Further, in its briefing and by the evidence it has presented, Plaintiff has completely ignored the "abstraction-filtration-comparisons" standard.  In its summary judgment briefing, Plaintiff's only argument regarding the protected aspects of the Anders Plan is that it has "identified several unique design and construction features that give Savant homes

their distinguishing look and feel". (ECF No. 40 at 16.)  Plaintiff then cites its interrogatory responses and Alan Strope's deposition, both of which purport to identify elements of the Anders Plan that Plaintiff believes are "original or unique." (*Id.* (citing Strope Dep. at 76-77 & ECF No. 40-11).)  Plaintiff fails to conduct any analysis of how these elements were designed, or explain how they are original or unique to the Anders Plan.  Larsen's report makes no attempt to differentiate between the protected and unprotected aspects of the Anders Plan, instead opining that the overall layout and flow of the homes (which consists primarily of unprotected elements) is so substantially similar that they must have been copied.  (ECF No. 40 at 16; 40-10.)  This briefing and evidence is plainly insufficient to meet Plaintiff's summary judgment burden.  *See Gates Rubber*, 9 F.3d at 833 ("The court's inquiry does not end with a finding that the defendant copied portions of the plaintiff's program.  Liability for copyright infringement will only attach where protected elements of a copyrighted work are copied.").

Contrary to Plaintiff's approach, Defendants have produced an expert report prepared by Rob Fisher, which specifically analyzes whether each aspect of the Anders Plan is sufficiently unique so as to afford it protected status under the Copyright Act. (ECF No. 38-10.)  Mr. Fisher relies on his experience as an architect, compares the Anders Plan to four house plans that are publicly available online, and opines that the only protectable element of the Anders Plan is "[t]he wrought iron bars over the 3 [square] center windows at the front of the garage." (*Id.* at 9.)  Fisher's report concludes that all other aspects of the Anders Plan are not protected because they are standard or stock elements, are the product of functional concerns, or are the product of common market forces.  (*Id.* at 6-8.)

9

Notably, the Accused Homes both have only one rectangular window on the front of the garage, and neither has wrought iron bars over that window.  (ECF No. 38 at 8.) Thus, no reasonable juror could possibly conclude that the Accused Homes are substantially similar to the aspects of the Anders Plan which Mr. Fisher has identified as protected.  As Plaintiff has offered no specific evidence contrary to Mr. Fisher's report, and has presented no evidence showing that other aspects of the Anders Plan are so unique as to be protected under the copyright laws, the Court could easily end its analysis here and grant summary judgment in favor of Defendant on the copyright infringement claim.

However, while Plaintiff has not submitted an expert report on this issue or otherwise analyzed the issue in its summary judgment briefing, Plaintiff has identified a number of characteristics of the Anders Plan that it considers "original or unique".  (ECF No. 40-11 at 7-8.)  In the interest of viewing all evidence in the light most favorable to Plaintiff, and drawing all reasonable inferences in favor of Plaintiff, the Court will undertake an analysis of whether any of these characteristics are, in fact, protected by the Copyright Act.

In its interrogatory responses, Plaintiff stated that the following aspects of the Anders Plan are "original or unique":

> The Anders Plan was designed as an open floor plan with the master bedroom on one side of the house and the other 2 bedrooms on the opposite side.  The flexibility with the Anders Plan to create flex space within this plan and appeal to a buyer that would like that flexibility.  The home was intended for the "empty nesters" and "baby boomers".  The inviting entry into the open space took away that closed-in feeling that many homes have.  Immediately, within the entry is the large stairway to the basement with a large window

that allows natural light to not only the stairs, but to the great room beyond.  The large master suite with the large master bath creating a retreat in these areas.  Specifically, the large bath tub area with the fireplace at the foot of the tub and visible from the bed on the opposite side of the wall.  The reasoning is for the enjoyment from both sides of the fireplace in this private space.  Creating the walk-in shower without a door to the shower offers a space to freely live without being enclosed.  Having an oversized walk-in closet in the feature that offers lots of light in the closet with windows on an exterior wall and plenty of space to layout and organize the closet.  Access directly into the laundry room is a feature that is quite unique and has not been seen or built by any of Savant's owners or employees.  This feature was incorporated because of the closeness to the laundry room and the closet where the laundry is usually generated.  The closeness of the laundry to the garage was also part of the specific design allowing easy access to the master bedroom without walking through the entire home. The Anders Plan offers a side load garage giving the curb appeal and the immediate access into the kitchen without walking throughout the house with day-to-day items, such as groceries.  Creation of the gourmet kitchen that is open to the dining area, and the entertainment area (the Great Room), all within the same space.

(ECF No. 40-11 at 7-8.)  In Mr. Strope's deposition, the following exchange occurred:

Q:  What do you believe are the distinctive source [sic] identifying the elements of the Anders plan?

A. The Anders plan has multiple distinctive elements that is common to a Savant home, you know, starting off with the garage situation of how it is tied into the side load garage onto the house to be able to fit onto most standard lots. The uniqueness from the front elevation of this home with the hip roofs that we provided onto it with the detail on how we did the stucco and the stone as well as the metal across the front of the windows, and those are all elements that tie this style of home of what we've designed to fit from the outside as well as onto the inside.

In particular, on the inside of the home, the layout was specifically designed by my wife and I to have a home that we can provide to our clients that has the openness feeling to it, has a separation between the master and the other

11

bedrooms, was designed for an empty nester and has the features of a master suite that is almost like a master retreat, having the large tub with the see-through fireplace as an option that goes directly into the master so it's usable in both spaces, having the walk-in shower that is a distinct feature of allowing – having dual shower heads within the shower but having this open feeling of openness into this large bathroom.

The other distinct feature that I think that we've put in is the walk-in closet and the large walk-in closet, the size of the closet, the direct connection to the laundry room, where the majority of this laundry is created is off of the master because it was somewhat designed as an empty nester's home.

The wide staircases coming to the basement is another feature that we have put into this home to – that it's not a straight run, that it has a good curvature, it's very open, they are very wide, it's a very comfortable feel into the basement. And the home is -- was designed to be inviting people to come into the front door.  It's inviting, this openness to it.

(Strope Dep. at 76-77.)

From this evidence, the Court has attempted to apply the "abstraction-filtration-comparisons" test, and dissect the Anders Plan to filter out the protectable elements. *Gates Rubber*, 9 F.3d at 834.  In doing so, the Court has considered the evidence in the record regarding features of homes that are common, dictated by market forces, or purely functional.  (*See* ECF No. 38-10.)  The Court has also considered the design elements of the four floor plans analyzed by Defendants' expert.  (*Id.* at 9-11.)  From this evidence, the Court finds that the following features are not protected, as they are common and functional rather than unique or original: the open floor plan with master on one side of house and two bedrooms on the opposite side; the "flex space"; the "inviting entry into the open space"; the large master suite with large master bath intended to "create a retreat"; the oversized walk-in closet; the proximity of the laundry

room to the master suite; the side load garage with immediate access to the kitchen;

and the gourmet kitchen that is open to the dining room and great room.  *See* 37 C.F.R.

§ 202.11 (stating that "standard configurations of spaces, and individual standard

features such as windows, doors, and other staple building components" cannot be

copyrighted); *Logan Developers, Inc. v. Heritage Bldgs., Inc.*, 2014 WL 2547085, at *8

(E.D.N.C. June 5, 2014) (finding that the common features, including arrangement of

the bedrooms, closets, and open spaces, were not protected by copyright law); *Jeff*

*Benton Homes v. Ala. Heritage Homes, Inc.*, 929 F. Supp. 2d 1231, 1254 (N.D. Ala.

2013) (denying copyright protection to floor plan with a master separated from two other

bedrooms by the kitchen and living areas because those features are "too common").

      Because all of the features described above are not protectable under copyright

laws, the court disregards them for purposes of the substantial similarity analysis.

*Universal Furniture, Int'l, Inc. v. Collezione Europa USA. Inc.*, 618 F.3d 417, 436 (4th

Cir. 2010).  Thus, the remaining features that Plaintiff has identified as original or unique

are: the large stairway to the basement with large entry to allow natural light onto the

stairs and the great room "very open, very wide"; the arrangement of the master bath,

including a fireplace at the foot of the bath tub that is visible from bed on opposite wall;

metal across the three front windows of the garage; a large walk in shower; and the T-

shaped oversized master closet with exterior windows to allow in lots of light.  (*See* ECF

Strope Dep. at 76-77; ECF No. 40-11 at 7-8.)  Though the Court questions the

uniqueness of some of these characteristics, the Court will consider these aspects of

the Anders Plan to be protected by copyright law for purposes of summary judgment.

      The Court has compared the protected elements of the Anders Plan with the

Accused Homes and concludes that no reasonable juror could find that there is substantial similarity.  Both of the Accused Homes have a narrower stairway leading to the basement that is in the Anders Plan.  (ECF No. 40-10 at 8-9.)  The master closets in the Accused Homes are also smaller and shaped differently than the Anders Plan. (ECF No. 38-3.)  As the wide open nature of the stairway and the shape and size of the closet are what makes these elements so unique as to be eligible for copyright protection, these differences are notable.

Even more extreme differences are apparent in the master bathrooms.  The Anders Plan has an angled bathtub next to a single sink with a second sink on the opposite wall, a fireplace next to the bathtub visible from the bedroom, a water closet next to one of the sinks, and no linen closet.  The 300 Madera home has a straight bathtub next to a shower with two sinks on the opposite wall, a see-through fireplace next to the bathtub, a water closet tucked behind the two sinks, and a linen closet.  The 8466 Blackwood home has no bathtub, no fireplace, a water closet separate from the sinks and shower, and a linen closet.  (ECF No. 38 at 9; ECF No. 38-3.)  Aside from the shared element of two sinks in each bathroom, there is little overlap in these designs.

Finally, as the Court has previously noted, the windows on the garage of the Accused Homes are significantly different from the Anders Plan.  The Anders Plan has three windows across the front of the garage, each covered by metal bars.  The Accused Homes have one window each, and no metal bars.  (ECF No. 38 at 8; ECF No. 38-3.)

The Court recognizes that substantial similarity is typically a question of fact that should be resolved by the jury.  *See Jacobsen v. Desert Book Co.*, 287 F.3d 936, 943

14

(10th Cir. 2002) (holding that whether works are substantially similar is a "classic jury question"); *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 142 (5th Cir. 2004). However, where no reasonable juror could find that there is substantial similarity between the protectable elements of a copyrighted work and the alleged infringer, summary judgment is appropriate.[1]  *See Blehm v. Jacobs*, 702 F.3d 1193, 1208 (10th Cir. 2012) (finding that images are "so dissimilar as to protectable expression that the substantial similarity question need not go to a jury."); *Johnson v. Gordon*, 409 F.3d 12, 18 (1st Cir. 2005) ("Summary judgment on [substantial similarity] is appropriate only when a rational factfinder, correctly applying the pertinent legal standards, would be compelled to conclude that no substantial similarity exists between the copyrighted work and the allegedly infringing work.").  The Court does not take lightly the decision to grant summary judgment on such a fact-driven question.  However, when the Court compares the *protected* elements of the Anders Plan to the Accused Homes, it has little difficulty concluding that no reasonable juror could find that they are substantially similar. Accordingly, the Court finds that summary judgment is appropriate on Plaintiff's copyright infringement claim.

---

[1] Notably, at least one court has held that substantial similarity with regard to architectural plans is more properly judged by a court than a jury.  *See Intervest Constr.*, 554 F.3d at 920 ("Because a judge will more readily understand that all copying is not infringement, particularly in the context of works that are compilations, the 'substantial-similarity' test is more often correctly administered by a judge rather than a jury—even one provided proper instruction. The reason for this is plain—the ability to separate protectable expression from non-protectable expression is, in reality, a question of law or, at the very least, a mixed question of law and fact. It is difficult for a juror, even properly instructed, to conclude, after looking at two works, that there is no infringement where, say, 90% of one is a copy of the other, but only 15% of the work is protectable expression that has not been copied.").

**B.      Contributory Infringement and Civil Conspiracy**

Defendants move for summary judgment on Plaintiff's claims for contributory

infringement and civil conspiracy on the grounds that both claims are derivative of a

finding of copyright infringement.  (ECF Nos. 37 & 38.)  Though it argues that summary

judgment is not appropriate because there is a genuine dispute of material fact as to the

copyright infringement claim, Plaintiff agrees that these claims are derivative.  (ECF

Nos. 39 & 40.)

Having granted summary judgment on Plaintiff's copyright infringement claim, the

Court also concludes that summary judgment is appropriate on Plaintiff's claims for

contributory infringement and civil conspiracy.

**C.      Trade Dress Infringement**

"The trade dress of a product is its overall image and appearance, and may

include features such as size, shape, color or color combinations, texture, graphics, and

even particular sales techniques."  *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d

964, 977 (10th Cir. 2002).   Protection may extend to a single feature or a combination

of features in a trade dress.  *See Vornado Air Circulation Sys., Inc. v. Duracraft Corp.*,

58 F.3d 1498, 1502 (10th Cir. 1995).  In order to demonstrate trade dress infringement,

the plaintiff must demonstrate:  (1) that its trade dress is inherently distinctive or has

become distinctive through secondary meaning; and (2) likelihood of confusion.  *See id.*

at 1502-03.  In addition, the party asserting trade dress infringement bears the burden

of demonstrating that the trade dress is not functional.  15 U.S.C. § 1125(a)(3); *Wal-

Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 210 (2000).

Defendants contend that Plaintiff has failed to identify the features of the Anders

16

Case 1:13-cv-02049-WJM-MEH   Document 48   Filed 02/27/15   USDC Colorado   Page 17 of 23

Plan that qualify as trade dress, has failed to show that these elements are distinctive,

and has failed to establish likelihood of confusion.  (ECF No. 37 at 19-20.)

      1.   <u>Inherently Distinctive</u>

The Tenth Circuit has held:

> A trade dress is inherently distinctive if its intrinsic nature
> serves to identify a particular source.  Such trade
> dresses almost automatically tell a customer that they refer to a
> brand and immediately signal a brand or a product source.
> Like trademarks, the inherent distinctiveness of a trade dress
> is categorized along the generic-descriptive-
> suggestive-arbitrary-fanciful spectrum.  A trade dress which
> is not inherently distinctive, however, may acquire
> distinctiveness through secondary meaning.  In other words,
> over time customers may associate the primary significance
> of a dress feature with the source of the product rather than
> the product itself.  When a trade dress has become
> distinctive of a product's source, courts have permitted
> protection under § 43(a) of the Lanham Act.

*Sally Beauty*, 304 F.3d at 977 (internal quotations and citations omitted).

     In attempting to show that aspects of its Anders Plan are inherently distinctive,

Plaintiff relies on the same characteristics that it identified as "unique or original" for

purposes of the copyright analysis, such as the "flex space", the "inviting entry into the

open space", the "large master suite and master bath creating a retreat", and the

"oversized walk-in closet".  (ECF No. 40 at 8-9, 20-21.)  However, Plaintiff utterly fails to

analyze how any of these characteristics are inherently distinctive.  As discussed above,

the majority of these elements are common features in modern homes or are functional,

neither of which qualify for trade dress protection.  *See* 15 U.S.C. § 1125(a)(3); *Samara*

*Bros.*, 529 U.S. at 210.  Plaintiff also fails to cite any evidence showing that the Anders

Plan has acquired distinctiveness through secondary meaning.  Thus, the Court finds

17

that Plaintiff has failed to meet its summary judgment burden with regard to the distinctiveness of its trade dress.

    2.    <u>Likelihood of Confusion</u>

The Court also finds that there is no genuine dispute of fact as to likelihood of confusion.  In considering whether a party has shown likelihood of confusion, the Court must consider the following factors: (1) intent to copy; (2) similarity of products and manner of marketing; (3) degree of consumer care; (4) degree of similarity between the parties' trade dress; (5) strength of the plaintiff's trade dress; and (6) evidence of actual confusion. *Sally Beauty*, 304 F.3d at 979.

With regard to the first factor, there is conflicting evidence regarding Defendants' intent to copy.  The Wagners toured the model home along with their builder and architect, which shows access and could permit a jury to infer intent.  However, the Wagners have testified that they intended to base the design on the Accused Homes on a home they had previously owned in Arizona.  Viewing the evidence in Plaintiff's favor, the Court finds that this factor weighs slightly in favor of finding a likelihood of confusion.

With regard to the second factor, as discussed above, the Court concludes that there is not substantial similarity between the distinctive aspects of the Anders Plan and the Accused Homes for purposes of copyright infringement.  The same analysis applies here. *See Sally Beauty*, 304 F.3d at 979 (applying copyright analysis to trade dress infringment).  Additionally, both of the Accused Homes are privately owned by the Wagners; neither has ever been put on the market to be sold.  As such, the Accused Homes have never been marketed, and there can be no overlap or similarity between methods of marketing.  Thus, the second and fourth factors weigh heavily against a

18

finding of likelihood of confusion.

With regard to the third factor, "[i]t is generally assumed that consumers with expertise or who are buying expensive products or services exercise a greater degree of care when doing so and are thus less easily confused." *Edge Wireless, LLC v. U.S. Cellular Corp.*, 312 F. Supp. 2d 1325, 1333 (D. Or. 2003) (citing *Brookfield Comm'ns, Inc. v. W. Coast Enter. Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999) ("What is expected of this reasonably prudent consumer depends on the circumstances.  We expect him to be more discerning—and less easily confused—when he is purchasing expensive items")).  A home is likely one of the most expensive purchases a consumer will make in his or her lifetime.  As such, consumers are far less likely to be confused by similarity between homes than they would be ordinary consumer products.  The Court concludes that this factor also weighs heavily against a finding that there is a likelihood of confusion.

The strength of trade dress is tied to its distinctive nature.  *See Sally Beauty*, 304 F.3d at 979.  The Court has already found that Plaintiff has failed to show that its trade dress is distinctive and, therefore, any protection for such trade dress is weak.  *Id.*  This factor weighs against a finding of likelihood of confusion.

Finally, the only evidence of actual confusion that Plaintiff has presented is a statement made by one buyer who visited Plaintiff's model home, in which that consumer indicated that she thought the 8466 Blackwood home was being built by Plaintiff.  (Strope Dep. at 82.)  Also, a realtor inquired whether Plaintiff was building the home at 8466 Blackwood.  (*Id.* at 15.)  There is no evidence that anyone ever confused the 300 Madera home with Plaintiff's Anders Plan.  The Court finds that these examples are such *de minimis* evidence of consumer confusion that, to the extent this factor

weighs in Plaintiff's favor, such weight is minimal.  *See Sally Beauty*, 304 F.3d at 974

("Evidence of actual confusion does not create a genuine issue of fact regarding

likelihood of confusion if it is *de minimis*.").

    Having considered all six factors, the Court finds that Plaintiff has failed to show

a genuine dispute of material fact as to whether there is a likelihood of confusion

between its trade dress and the Accused Homes.  Accordingly, summary judgment on

Plaintiff's trade dress claim is appropriate.

**D.    Remaining Claims**

    Plaintiff also brings claims for intentional interference with business advantage,

civil theft, and deceptive trade practices.  (ECF No. 1 at 8-9.)  Defendants move for

summary judgment on each of these claims.  (ECF Nos. 37 & 38.)  In its responses to

the Motions, Plaintiff does not address these claims at all.  (ECF Nos. 39 & 40.)  Despite

Plaintiff's failure to oppose the Motion, the Court cannot grant the Motion without first

determining whether Defendant has met its burden of production.  *See Reed v. Bennett*,

312 F.3d 1190, 1994-95 (10th Cir. 2002).

     To succeed on a claim for intentional interference with business advantage, a

plaintiff must show that there is a reasonable probability that a contract would have

resulted but for the defendant's conduct.  *Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th

Cir. 1997).  Defendants have pointed to testimony from Mr. Strope that he cannot name

a single individual who was in the process of contracting with Plaintiff but declined to do

so because of some action taken by Defendants.  (ECF No. 37 at 23.)  Plaintiff offers no

evidence in rebuttal.  As such, the Court finds that Plaintiff has failed to show a genuine

dispute of material fact as to its claim for intentional interference with business

20

advantage, and summary judgment is appropriate on this claim.

A plaintiff may sustain a claim for civil theft if he shows that the defendant knowingly obtained control over the plaintiff's property without authorization and with the specific intent to deprive the plaintiff of the property. *Itin v. Ungar*, 17 P.3d 129, 134 (Colo. 2000). Defendant contends that Plaintiff has failed to show that it has been deprived of the Anders Plan, and Plaintiff offers no contrary evidence. (ECF No. 37 at 24.) In fact, the record shows that Plaintiff continues to build homes based on the Anders Plan. (ECF No. 37-11 at 17.) As such, the Court finds that summary judgment is appropriate on the civil theft claim.

To prove a private cause of action for a deceptive trade practice, a plaintiff must show: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury. *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998). Defendant alleges that Plaintiff has failed to show that it made a false representation sufficient to constitute a deceptive trade practice because Plaintiff cannot show any misstatement by Defendants that "induce[d] a party to act, refrain from acting, or have the capacity or tendency to attract customers." (ECF No. 37 at 25 (quoting *HealthONE of Denver, Inc. v. United Health Grp.*, 805 F. Supp. 2d 1115, 1120 (D. Colo. 2011).) Plaintiff offers no contrary evidence. As such, the Court finds that Plaintiff has failed to show a genuine dispute of fact as to an essential element of its deceptive trade practice claim, and that summary

judgment is appropriate.

Finally, Defendants move for summary judgment on Plaintiff's "claim" for a declaratory judgment.  As a declaratory judgment is a form of relief rather than an independent cause of action, the Court finds that summary judgment on any such "claim" in the Complaint is appropriate.  *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937) (holding the Declaratory Judgment Act does not create an independent cause of action but only affords a form of relief previously unavailable).

Accordingly, the Court grants Defendants' Motions in so far as they seek summary judgment on Plaintiff's claims for intentional interference with business advantage, civil theft, deceptive trade practices, and declaratory judgment.

**E.   Claims Against Defendant King**

Plaintiff brings each of its claims against all Defendants, including Stewart King d/b/a Kodiak Customer Design.  (ECF No. 1.)  Mr. King has appeared in this case *pro se*, has filed an Answer on his own behalf, responded to Plaintiff's discovery requests, and has had his deposition taken by Plaintiff.  (ECF Nos. 20, 39-7, 39-8, 40-7, 40-8.)  Mr. King has not, however, filed a motion for summary judgment.

Although "the practice of granting summary judgment *sua sponte* is not favored," *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1132 (10th Cir. 2003), a *sua sponte* order of summary judgment may be appropriate if "the losing party was on notice that she had to come forward with all of her evidence."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).  In this case, the summary judgment motions filed by Collins and the Wagners alerted Plaintiff to the need to come forward with all of its evidence on all claims brought in the Complaint.  The Court's above analysis of whether summary

judgment was appropriate on each of Plaintiff's claims was not affected by the role each Defendant played in the design and construction of the Accused Homes.  That is, there is no reason to believe that Plaintiff could show a genuine dispute of fact as to its claims against King, the architect of the Accused Homes, when it could not do so as to its claims against the owners and builder of the Homes.

Accordingly, the Court *sua sponte* grants summary judgment in favor of Defendant King on all claims.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants Douglas Collins and Douglas Consulting, LLC's Motion for Summary Judgment (ECF No. 37) is GRANTED;

2. Defendant Tammie Wagner and Ron Wagner's Motion for Summary Judgment (ECF No. 38) is GRANTED;

3. The Court *sua sponte* GRANTS summary judgment in favor of Defendant Stewart King on all claims;

4. Judgment shall enter in favor of Defendants on all claims. Defendants shall have their costs.

Dated this 27th day of February, 2015.

BY THE COURT:

William J. Martinez
United States District Judge

23